IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PETER TAYLOR**, | : CIVIL ACTION NO. 1:11-CV-1291 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| **C.O. R. SANDERS, et al.**, | : |
| Defendants | : |

# MEMORANDUM

Plaintiff Peter Taylor ("Taylor"), an inmate formerly housed at the United States Penitentiary at Canaan ("USP-Canaan"), commenced this Bivens[1] action on December 27, 2011. (Doc. 1.) Named as defendants are the following individuals employed at USP-Canaan: C.O. R. Sanders ("Sanders"); Lt. B. Sudul ("Sudul"); Lt. R. Thomas ("Thomas"); and Teacher T. Salzameda ("Salzameda"). Before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 21.) For the reasons set forth below, the motion to dismiss will be granted in part and the motion for summary judgment will be granted in part.

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

**I.      Motion to Dismiss**

    **A.      Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8

requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

**B.    Allegations of the Complaint**

On November 16, 2010, while Taylor was in the Chow Hall at USP-Canaan, defendant Sanders allegedly threatened him and assaulted him by pushing him and punching him in the back. (Doc. 1, at ¶ 10.) He states that Sanders took him to the Lieutenant's Office and put him "in the cage." (Id.) Taylor informed Sanders that he wanted to speak to a lieutenant about the assault. (Id. at ¶ 11.)

Later, defendants Sudul and Thomas entered the Lieutenant's Office and began verbally threatening Taylor. (Doc. 1, at ¶ 12.) Thomas allegedly "jump[ed] up" in his face and said "[w]ho the f_ _ _ you think you are wanting to complain about what my officer did to you." (Id. at ¶ 13.) "Lt. B. Sudul then got in my face and said 'Don't worry I promise I'ma [sic] get you, I promise I'ma [sic] set you up. You don't make complains [sic]. Now get the f_ _ _ out of here." (Id. at ¶ 14.)

Taylor further alleges that "on or about 6:00 p.m. on Nov. 16, 2010, while in the classroom of the education department, Ms. Salzameda which is a defendant

3

came into the classroom, why you complaining about staff.  Plaintiff ask defendant can he explain.  Defendant Salzameda told plaintiff she talk[ed] to Defendant Sudul, and that Defendant Sudul wanted Defendant Salzameda to write plaintiff up because plaintiff was making a complaint on Defendant R. Sanders.  Defendant Salzameda told plaintiff she was going to write a false incident report."  (Doc. 1, at ¶¶ 15-16.)

Thereafter, Taylor was escorted to the Lieutenant's Office.  (Doc. 1, at ¶ 17.)  Both Sudul and Thomas then approached him and informed him that they arranged for Salzameda to write a false incident report because of Taylor's complaint against Sanders, and Sudul took Taylor's watch and hat.  (Id. at ¶ 18.)  He was then taken to the Special Housing Unit ("SHU").  (Id. at ¶ 19.)  Minutes later, Sudul served him with the incident report and stated "I told you I was going to set you up.  I wrote so much shit on you, you going to be in the program."  (Id.)  On November 24, 2011, Taylor had his disciplinary hearing.  He was found guilty and placed in the SHU for ninety days.  (Id. at ¶ 21.)

Taylor alleges that defendant Sanders violated his eighth amendment rights by using excessive force.  (Doc. 1, at ¶ 24.)  He also alleges that defendants Sudul, Thomas and Salzameda violated his constitutional rights when they conspired to issue him a fabricated incident report in retaliation for lodging a complaint against defendant Sanders.  (Doc. 1, at ¶¶ 26-28.)

4

**C.     Discussion**

Bivens is analogous to its statutory cousin, 42 U.S.C. § 1983[2], which allows federal suits of state agents who commit civil rights violations while acting under color of state law.  The required elements of a Bivens claim are (1) the conduct complained of was a person acting under color of law, and (2) the conduct deprived that person of a right, privilege, or immunity secured by the Constitution.  See, e.g., Grohman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (describing elements of a § 1983 claim).

      1.     Sovereign Immunity

Defendants first argue that, to the extent that plaintiff names defendants in their official capacities, they are entitled to sovereign immunity.  The doctrine of sovereign immunity precludes a plaintiff from bringing a Bivens action against a federal agency, See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994).  Suits brought

---

[2]Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

against federal officials in their official capacities are to be treated as suits against the employing government agency. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). As a result, a Bivens suit brought against an individual federal official acting in his official capacity is barred by the doctrine of sovereign immunity, See also Chinchello v. Fenton, 805 F.2d 126, 130 n. 4 (3d Cir. 1986) (affirming district court's conclusion that sovereign immunity barred an official-capacity Bivens claim), and the court lacks jurisdiction to hear the claim. See Kabakjian v. United States, 267 F.3d 208, 211 (3d Cir. 2001) (holding that district courts lack jurisdiction to hear claims brought against the United States unless Congress has explicitly waived sovereign immunity)." Thus, the claims against all defendants in their official capacities are subject to dismissal.

    2.    Verbal Harassment

Taylor alleges that defendants Sanders, Sudul and Thomas verbally harassed him. Acts of verbal harassment and taunting alone cannot qualify as constitutional violations. See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19, 2005 WL 3338370 (D.N.J. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8–9,

2005 WL 2340745 (D.Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001)); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim"). Further, mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228–29 (M.D. Pa. 1986) ("[v]erbal abuse is not a civil rights violation . . . "). Thus, Taylor's various allegations of verbal harassment fail to state a claim and allowing amendment would be futile.

## II. Summary Judgment

### A. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

The pertinent portions of the Middle District of Pennsylvania Local Rules of Court, which are set forth in the Standing Practice Order served upon Taylor on July 13, 2011 (Doc. 5), provide that, in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . , as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. LR 56. 1.  The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Although Taylor submitted a statement of facts (Doc. 26), the statement is not in compliance with the Local Rules of Court.  Specifically, he failed to include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement of material facts filed by defendant.  Taylor filed a three-page statement of facts containing six paragraphs which, does not correspond in any manner with the eighty-nine paragraphs of facts set forth in defendants' statement.  (Docs. 23, 26.)  Therefore, to the extent that he has failed to controvert material facts contained in defendants' statement they will be deemed admitted.

**B.     Material Facts**

Defendant Sanders has been employed at USP-Canaan as a Senior Officer Specialist since approximately 2008. (Doc. 22-2, ¶ 1.) On November 16, 2010, he was working from 6:00 a.m. until 2:00 p.m. as the day-watch activities lieutenant. (Id. at ¶ 5.) In this capacity, Sanders states that he would have been in the Food Services Department at 11:20 a.m., for the inmate lunch meal. (Id.) He has no recollection of Taylor and denies that he pushed or punched him either in the inmate dining hall or during the alleged escort to the Lieutenant's Office. (Doc. 23, ¶ 1; Doc. 22-2, at ¶ 5.) Taylor "contends that Sanders did in fact, punch, push and threaten him - - without provocation." (Doc. 28, ¶ 3.)

Defendant Sudul has been employed by the Federal Bureau of Prisons ("BOP") since May, 2001, and has been assigned to USP-Canaan as a lieutenant since October 10, 2010. (Doc. 22-2, at 42, at ¶ 1.) Defendant Thomas has been employed by the BOP since February, 2002, and has been assigned to USP-Canaan since June 22, 2008. (Doc. 22-2, at 45, at ¶ 1.)

Defendants Sudul and Thomas deny they were involved in any incident with Taylor during or after the lunch meal on November 16, 2010. (Doc. 23, at ¶ 2.) Thomas was assigned to the 4:00 p.m. to midnight shift on November 16, 2010 and arrived at USP Canaan shortly before 4:00 p.m. (Id. at ¶ 3; Doc. 22-2, at 49.) Sudul was assigned to the 2:00 p.m. to 10:00 p.m. shift. (Doc. 22-2, at 49.)

On November 16, 2010, at approximately 6:00 p.m., Taylor was in a classroom in the Education Department, performing his inmate work assignment of tutor.

9

(Doc. 23, at ¶ 4.) Taylor asked Salzameda for assistance with an algebra problem he was preparing for an Adult Continuing Education (ACE) class. (Id. at ¶ 5.) While she was explaining the solution, Taylor asked her, "Can we talk?" (Id. at ¶ 6.) She sensed that he did not wish to talk about algebra, and she responded, "As long as it was about algebra and nothing else." (Id. at ¶ 7.) He then told her he was "short", which, in prison, means that an inmate is nearing the end of his term of imprisonment. (Id. at ¶ 8.) She told him it made no difference to her whether he was "short" or not, and she was uncomfortable with the conversation and that he needed to find himself another job immediately. (Id. at ¶¶ 9-10.) As she turned away from him, he said, "Ms. S., I am getting out soon and I want to get with you on the outside and be with you, if you know what I mean." (Id. at ¶ 11.) She observed him rubbing the front of his pants in the crotch area as if he was rubbing his penis in a sexual manner. (Id. at ¶ 12.) She immediately left the classroom and notified defendant Sudul of the incident. (Id. at ¶¶ 13, 15.) Shortly thereafter, Sudul sent Compound Officers to escort Taylor from the Education Department to the Lieutenant's Office. (Id. at ¶¶ 14-18.)

When Taylor arrived in the Lieutenant's Office, defendant Sudul pat-searched him and instructed him to sit in a chair and defendant Thomas, who was present in the Lieutenant's Office with defendant Sudul, asked him what happened. (Doc. 23, at ¶¶ 19-20.) He responded, "Look, I am a man. I'm going to try to get pussy anyway I can, even if it's a staff member. If I want it, I'm going to get it." (Id. at ¶ 21.) After he made this statement, he was placed in the SHU in

10

Administrative Detention. (Id. at ¶ 22.) Defendant Salzameda issued Incident Report 2090835 charging Taylor with Making Sexual Proposals or Threats and Engaging in a Sexual Act, violations of Codes 206 and 205, respectively, which was delivered to Taylor at approximately 8:35 p.m. by defendant Sudul. (Id. at ¶¶ 23, 25.)

Defendant Sudul investigated the charges. (Id. at ¶ 25.) He advised Taylor of his right to remain silent at all stages of the disciplinary process and Taylor chose to make the following statement: "You know what I said in the office." (Id. at ¶¶ 26-27.) He did not request any witnesses during the investigation. (Id. at ¶ 28.) Supporting memoranda were collected from staff who witnessed the incident. (Id. at 30.) At the conclusion of the investigation, the matter was referred to the Unit Discipline Committee ("UDC") for an initial hearing and, after conducting an initial hearing, the UDC referred the incident report to the Discipline Hearing Officer ("DHO"). (Id. at ¶¶ 31-36.) The DHO hearing took place on December 7, 2010. (Id. at ¶ 44.) At the conclusion of the hearing, the DHO determined that the greater weight of the evidence supported the charges of Conduct Disruptive to the Security or Orderly Running of a BOP Facility (Code 299) and Engaging in a Sexual Act (Code 205). (Id. at ¶ 55.) He was sanctioned with the loss of twenty-seven days of good conduct time and thirty days of disciplinary segregation, *inter alia*. (Doc. 23, ¶ 71.) The DHO report was delivered to Taylor on December 20, 2010. (Id. at ¶ 74.)

On December 29, 2010, plaintiff filed an appeal to the BOP Northeast Regional Office, which was rejected the following day because Taylor improperly wrote in the Response portion of the appeal form. (Doc. 23, ¶¶ 75-76.) He was

11

advised that he could correct the error and resubmit his appeal within ten days of the rejection notice. (Id. at ¶ 77.) He resubmitted the appeal twenty-one days later on January 20, 2011. (Id. at ¶ 78.) On January 26, 2011, the resubmitted appeal was rejected as untimely. (Id. at ¶¶ 79-80.) On February 8, 2011, he filed a Central Office Administrative Remedy appeal challenging the DHO action. (Id. at ¶ 81.) The appeal was rejected because his Regional appeal was untimely. (Id. at ¶¶ 82-83.) He was advised that he must provide staff verification to show that the late filing was due to matters outside of his control. (Id. at ¶ 84.) He took no further action and has not attempted to resubmit any appeals challenging the DHO action taken in connection with Incident Report Number 2090835. (Id. at ¶ 85.)

On April 27, 2011, a referral of unprofessional conduct was made to the BOP's Office of Internal Affairs ("OIA"). (Doc. 23, at ¶ 88.) Taylor "alleged Raymond Sanders, a Senior Officer Specialist pushed and punched him. (Defendants' Exhibit 7 (*in camera* submission), Declaration of Special Investigative Agent, at ¶ 3.) He also alleged that Officer Sanders threatened him and used profanity. (Id.) Additionally, Inmate Taylor alleged that Brian Sudul threatened him and retaliated against him for submitting a grievance against Officer Sanders." (Id.) The matter was assigned to a Special Investigative Agent ("SIA") at USP-Canaan on that same date. (Id.) The SIA represents that "[s]taff who were present in the immediate vicinity of the alleged incidents were interviewed and their affidavits are included hereto along with the investigation." (Id.) Sanders submitted an affidavit stating that he did not recall Taylor and did not recall any

incident involving this inmate. (Defendants' Exhibit 7, (*in camera* submission), Attach. a, at pp. 24-26.) The inmate who Taylor claimed witnessed him getting pushed by Sanders stated that he did not know inmate Peter Taylor #11967-052 and was not aware of the incident. (Id. at pp. 7, 12-13.) On November 2, 2011, the SIA submitted an Investigative Report to OIA. The report contained the following conclusion: "[t]he investigation was concluded and revealed insufficient evidence that Raymond Sanders physically abused an inmate. The investigation also revealed insufficient evidence that Brian Sudul threatened an inmate/verbal abuse. Therefore, the allegations of Physical Abuse of Inmates against Raymond Sanders, Senior Officer Specialist, and Threatening an Inmate/Verbal Abuse against Brian Sudul, Lieutenant, are not sustained." (Id. at p. 7. ) On November 17, 2011, OIA approved the investigation, and determined that the allegations against Officer Raymond Sanders and Lieutenant Brian Sudul were not sustained by credible evidence. (Defendants' Exhibit 7 (submitted *in camera*), Declaration of Special Investigative Agent, at ¶ 3.)

**C.     Discussion**

    1.     <u>Excessive Use of Force</u>

Defendants argue that the evidence does not support the allegation that defendant Sanders pushed or punched Taylor. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8–9 (1992). When reviewing Eighth Amendment excessive force claims, it must be

determined whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. Whether the force applied was excessive requires the examination of several factors outlined by the Supreme Court in Whitley v. Albers, 475 U.S. 312, 321 (1986), including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Based on the affidavit of Sanders, and the information contained in the Special Investigative Agent's Report, which led to the conclusion that there was insufficient evidence that Sanders physically abused Taylor, the record is devoid of evidence that Sanders used any force on Taylor. In an attempt to overcome summary judgment, Taylor simply states that "Taylor contends that Sanders did in fact, punch, push and threaten him - - without provocation." (Doc. 26, ¶ 3.) A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas, 331 F. Supp. 2d at 315; FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c),

(e). Taylor has failed to meet his burden and defendant Sanders is entitled to an entry of summary judgment.

Even if Taylor established that Sanders unnecessarily used force, Sanders would still be entitled to an entry of judgment. While the absence of serious injury is not dispositive, it does indicate that the force used was limited. See Wilkins v. Gaddy, — U.S. — , 130 S.Ct. 1175, 1178 (2010). "There is no constitutional violation for '*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind'. . . ." Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir.2000) (quoting Hudson, 503 U.S. at 9–10). At most, the force Sanders utilized included pushes from behind and physical contact in the back without evidence of anything approaching a moderate injury. Although *de minimis* injuries alone are not enough to justify a grant of summary judgment on an excessive force claim, in this instance they are indicative of the fact that the force utilized, if any, was also *de minimis*. See Brooks, 204 F.3d at 108–09. No reasonable jury could find that the *de minimis* force utilized by Sanders was "of a sort repugnant to the conscience of mankind" in violation of the Eighth Amendment.

### 2. False Misconduct/Retaliation/Conspiracy

Taylor alleges that his constitutional rights were violated on November 16, 2010, when defendants Sudul, Thomas and Salzameda conspired to issue him a fabricated incident report, in retaliation for lodging a complaint against defendant Sanders. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly

unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486–87. This rationale was later extended to disciplinary proceedings. Edwards v. Balisok, 520 U.S. 641 (1997). As such, an inmate may not bring a civil rights action related to an inmate disciplinary proceeding without first challenging and overturning, *via* appropriate proceedings, the disciplinary hearing in question. Id. at 646–47. To summarize, "a state prisoner's § 1983 action is barred (absent prior invalidation—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of the confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005).

As any type of award in Taylor's favor on these claims would call into question the validity of the underlying disciplinary proceedings, he cannot state a claim unless he can demonstrate that the decision finding him guilty of the charges of misconduct was invalidated on administrative appeal or through the issuance of a writ of habeas corpus. Because Taylor not successfully challenged or invalidated the proceedings at issue, defendants are entitled to an entry of summary judgment.

## III.    <u>Conclusion</u>

Based on the forgoing, defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) is granted in part and defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is granted in part.

An appropriate order follows.

 S/ Christopher C. Conner<br>
CHRISTOPHER C. CONNER<br>
United States District Judge

Dated:        September 18, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PETER TAYLOR**, | : | **CIVIL ACTION NO. 1:11-CV-1291** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **C.O. R. SANDERS, et al.**, | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 18th day of September, 2012, upon consideration defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 21) it is hereby ORDERED that:

1. The motion (Doc. 21) to dismiss is GRANTED with respect to the claims against defendants in their official capacities and the claims of verbal harassment.

2. The motion (Doc. 21) for summary judgment is GRANTED with respect to all remaining claims. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge